UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSE LEON,

                         Petitioner,                    09 CV 5760 (RPP)

            - against -                                 **OPINION AND ORDER**


JAMES CONWAY, Superintendant of Attica
Correctional Facility,

                         Respondent.
----------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

On or about May 29, 2009, Petitioner Jose Leon ("Petitioner" or "Defendant"),

*pro se*, submitted a Petition pursuant to 28 U.S.C. § 2254, challenging a judgment of

conviction of Sexual Abuse in the First Degree and Endangering the Welfare of a Child,

and his sentence of 15 years to life, based on his status as a persistent violent felony

offender.  Respondent James Conway, Superintendant of Attica Correctional Facility, by

and through counsel, the office of the Attorney General of the State of New York

("Respondent"), responded to the *pro se* petition by a declaration and memorandum of

law in opposition dated April 23, 2010.[1]  Petitioner's petition is denied for the reasons

stated below.

### I. BACKGROUND

On August 19, 2004, Petitioner was convicted by a jury in the New York State

Supreme Court, New York County, indictment 979/04 on three counts of Sexual Abuse

---

[1]      By order dated May 20, 2010, the Court granted Petitioner's application for an enlargement of
time to respond by traverse to Respondent's opposition memorandum and ordered that any traverse be filed
by June 11, 2010.  As of the date of this opinion, more than a month after Petitioner was to have submitted
his traverse, the Court has received no additional papers from Petitioner.

in the First Degree and one Count of Endangering the Welfare of a Child.[2]  On December

2, 2004, Petitioner was sentenced as a persistent violent felony offender pursuant to New

York Penal Law § 70.08, to an aggregate term of 15 years to life.

**A.    Factual Background**[3]

In February 2004, LP and her 13 year-old daughter KA[4] lived in Manhattan. (See

Transcript of Trial held Aug. 16-18, 2004 ("Trial Tr.") at 50-51.)  LP and Petitioner were

close friends to the extent that LP would give Petitioner a key to her home so that

Petitioner could walk LP's dog.  (Id. at 245, 250.)  KA regarded Petitioner as an uncle.

(Id. at 53, 246.)

On the afternoon of February 3, 2004, KA attended her after-school program and

then met her mother at her office.  (Id. at 248-49.)  During a work break, LP and KA

picked up dinner and went to their apartment.  (Id. at 249-50.)  LP had arranged for a

babysitter to watch KA so that LP could return to work, but the babysitter was running

late.  (Id. at 120, 249-252.)  LP left the apartment to return to work but, on her way out of

the building, ran into Petitioner.  (Id. at 250-51.)  Petitioner had a set of keys and planned

to eat dinner at LP's apartment.  (Id.)  LP returned to the apartment with Petitioner to

avoid leaving Petitioner alone with her daughter, but she eventually left with the

expectation that the babysitter would arrive shortly thereafter.  (Id.)

After LP left, Petitioner sat in the kitchen eating and looked at KA in a way that

made her feel uncomfortable.  (Id. at 55.)  KA went to her room, but came back out again

---

[2]     Two additional Sexual Abuse counts in the indictment were dismissed by the court.  The jury
acquitted Defendant of one count of Unlawful Imprisonment in the Second Degree.

[3]     The Government presented its case through the testimony of the victim, her mother, one of her
classmates, the assigned detective and the medical examiner.

[4]     Pursuant to New York Civil Rights Law § 50-b which provides that the "identity of any victim of
a sex offense . . . shall be confidential," the names of the victim and her mother have been altered in order
to protect the identity of the victim.

when Petitioner asked for a rubber band.  (<u>Id.</u>)  Petitioner was at the kitchen table

counting money.  (<u>Id.</u> at 56.)  KA went to the living room to watch television when

Petitioner asked whether KA would like to do something on the "down low" and make

money on the side.  (<u>Id.</u>)  Petitioner then approached KA and started kissing her on her

lips.  (<u>Id.</u> at 56-57.)  KA moved away and said that she was not "one of his little ho's."

(<u>Id.</u>)  Petitioner continued kissing KA on her mouth and cheeks.  (<u>Id.</u>)  Petitioner then put

his hands on KA's shoulders and walked her to her mother's room from behind.  (<u>Id.</u>)

Petitioner's grip on KA's right shoulder hurt her.  (<u>Id.</u> at 57-58.)  Once in the room,

Petitioner laid KA down on the bed on her stomach and turned off the lights.  (<u>Id.</u> at 59.)

Petitioner rubbed his "penis area" on KA's clothed buttocks.  (<u>Id.</u>)  Petitioner tapped KA

to get up and started rubbing her breasts with his hands.  (<u>Id.</u> at 60.)  He then pulled down

her shirt and sucked on her breasts.  (<u>Id.</u>)

    At this point, KA pretended like she heard somebody knocking at the door in

order to get away.  (<u>Id.</u> at 61.)  KA opened the door and saw a couple of her male teenage

friends in the hallway.  (<u>Id.</u> at 61-62.)  KA asked them if her next door neighbor, Margie,

had knocked on the door and tried to get their attention.  (<u>Id.</u>)  KA did not tell them what

was happening because she wanted to speak to an adult who could "really handle it."  (<u>Id.</u>

at 61-63.)  Petitioner told KA to come back inside.  (<u>Id.</u> at 71.)

    Once KA went back into the apartment, Petitioner went behind KA and led her by

the shoulders into the bathroom.  (<u>Id.</u> at 71-72.)  In the bathroom, Petitioner placed his

hands on KA's waist and said, "Don't worry. You just have to watch."  (<u>Id.</u> at 73.)

Petitioner pulled out his penis over the sink and "jerked off" while touching KA's

buttocks and kissing her lips and neck.  (<u>Id.</u> at 73-74, 98-99.)  He said to KA, "Look I'm

about to burst," and then ejaculated into the sink.  (Id. at 73-74, 99.)  He then pulled up

his pants and told KA to call her mother.  (Id. at 74.)  KA called her mother, but did not

tell her what happened because she was scared that Petitioner would hurt her or her

mother.  (Id. at 75-76.)  Petitioner also spoke with LP.  (Id. at 74.)  After he hung up the

phone, he told KA, "…you know what will happen if anybody finds out about me and

you," and left the apartment.  (Id. at 74-75.)

     While waiting for the babysitter to arrive after Petitioner left, KA rinsed out the

bathroom sink, took a bath, and brushed her teeth.  (Id. at 76-77.)  The babysitter

eventually arrived, but KA did not say anything to her about Petitioner and what

happened.  (Id. at 77.)  She was asleep when her mother got home.  (Id. at 78.)  LP

washed KA's clothing either that night or the following morning.  (Id. at 254-55.)  LP

also used the bathroom sink that night.  (Id. at 255.)

     The next morning, KA did not say anything about the previous night to her

mother.  (Id. at 78-79.)  At school, KA told a classmate what the Petitioner had done.  (Id.

at 80.)  The classmate convinced KA to tell the sex education counselor at her after-

school program.  (Id.)  After speaking with the counselor, KA went home.  (Id. at 81.)

The counselor and a social worker from the after-school program went to KA's

apartment.  (Id.)  They called LP and asked her to leave work early.  (Id.)  Once LP

arrived, KA spoke to her about what happened.  (Id. at 82.)  LP called the police.  (Id.)

     LP and KA also met with Detective Gutierrez of the Manhattan Special Victims

Squad on February 4, 2004.  (Id. at 82-83, 452.)  The detective did not notice a bruise on

KA's shoulder.  (Id. at 508-09.)  The detective also collected the clothes that KA had

worn which were washed and drying on the radiator to be tested for biological evidence,

but no such evidence was found.  (Id. at 83, 158-59, 550-551.)  Crime Scene officers took

swabs from the sink, but no semen was detected.  (Id. at 469-70, 473-74, 503, 551.)  The

detective located and arrested Petitioner on February 6, 2004.  (Id. at 454.)  On February

10, 2004, KA testified in the grand jury and had a photograph taken of a yellow bruise on

her shoulder from the incident.  (Id. at 100-01.)

## B.   Procedural History

On August 19, 2004, after a five day trial and three hours of deliberations, the jury

convicted Petitioner of three counts of Sexual Abuse in the First Degree and one count of

Endangering the Welfare of a Child, and acquitted Petitioner of Unlawful Imprisonment.

(Id. at 916-20.)  On December 2, 2004, the sentencing judge found Petitioner to have

been convicted of two prior violent felonies, manslaughter in the first degree, in 1976 and

in 1983 (Transcript of continued Sentencing Hearing held Dec. 2, 2004, ("12/2/04 Tr.")

at 41-46, 55-56), and Petitioner was sentenced as a Persistent Violent Felony Offender

pursuant to New York Penal Law § 70.08 to 15 years to life on each sexual abuse count,

and one year on the endangering the welfare of a child count, all to run concurrently.  (Id.

at 57-59.)

In June 2006, Petitioner appealed his conviction to the Appellate Division, First

Department.  His appellate counsel, Jonathan Kirshbaum, Esq. and Robert S. Dean, Esq.,

raised three points: (1) that prosecutorial misconduct deprived the appellant of a fair trial;

(2) that the sentencing court violated Petitioner's Sixth Amendment right of confrontation

under Crawford v. Washington, 541 U.S. 36 (2004), at the predicate felony hearing; and

(3) that Petitioner's adjudication and sentence pursuant to New York's persistent violent

felony offender statutes were unconstitutional under Apprendi v. New Jersey, 530 U.S.

455 (2000), and the Equal Protection Clause. (Ex. A at 2.)[5]  Appellee, the New York County District Attorney, filed its opposition brief to Petitioner's direct appeal in December 2006.  (Ex. B.)  On January 25, 2007, the Appellate Division unanimously affirmed Petitioner's judgment of conviction:

> The challenged portion of the prosecutor's examination of a witness and of the prosecutor's summation did not deprive defendant of a fair trial, and the court properly exercised its discretion in denying defendant's mistrial motions made in regard to these matters. To the extent that any aspects of the prosecutor's conduct could be viewed as improper, the court provided suitable curative actions that were sufficient to prevent any prejudice (*see People v. Santiago,* 52 N.Y.2d 865, 437 [1981]).  The jury is presumed to have followed the court's thorough instructions.
>
> The court properly adjudicated defendant a persistent violent felony offender on the basis of admissible evidence (*see* CPL 60.60[2]; 400.15[7][a]; 400.16[2]).  We have considered and rejected defendant's constitutional arguments concerning his persistent violent felony offender adjudication.
>
> <u>People v. Leon</u>, 827 N.Y.S.2d 156, 157 (App. Div. 1st Dep't 2007).

Petitioner's counsel sought leave to appeal to the New York Court of Appeals by letters dated January 29 and February 23, 2007. (Exs. D, E.)  The office of the New York County District Attorney wrote a letter in opposition, dated March 7, 2007.  (Ex. F.)  On March 9, 2007, Petitioner submitted a reply letter in further support of his application for leave to appeal.  (Ex. G.)  On May 3, 2007, the Court of Appeals granted Petitioner leave to appeal.  (Ex. H.)  On June 25, 2007, Petitioner's counsel filed a brief raising two points: (1) that the <u>Crawford</u> rule of admissibility applies at a persistent violent felony offender hearing and bars the People's use of a testimonial affidavit and (2) the court's adjudication and sentence pursuant to New York's persistent violent felony offender statutes were unconstitutional under <u>Apprendi</u>.  (Ex. I at 3.)  On August 17, 2007,

---

[5]     Unless otherwise noted, all exhibit references in this opinion refer to exhibits attached to Respondent's Memorandum in Law in Opposition to the Petition for Writ of Habeas Corpus dated Apr. 23, 2010 ("Opp'n Mem.").

appellee, the New York County District Attorney, filed its opposition brief.  (Ex. J.)  On August 28, 2007, counsel for Petitioner filed a reply brief.  (Ex. K.)  On February 19, 2008, the Court of Appeals of New York affirmed the order of the Appellate Division. People v. Leon, 884 N.E.2d 1037 (N.Y. 2008).

Within ninety days of the Court of Appeal's decision, Petitioner's counsel petitioned the Supreme Court of the United States for a writ of certiorari.  (See Petition pursuant to 28 U.S.C. § 2254 for a Writ of Habeas Corpus for a Person in State Custody dated May 29, 2009 ("Pet.") ¶ 9[g].)  The writ was denied by the Supreme Court in a decision entered June 23, 2008.  Leon v. New York, 128 S. Ct. 2976 (2008).

On May 29, 2009, Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus.  By motion dated December 12, 2009, Petitioner asked this Court to hold his habeas corpus petition in abeyance in order for Petitioner to exhaust an additional claim of ineffective assistance of appellate counsel in the state courts.  By letter dated December 21, 2009, Respondent opposed Petitioner's motion, arguing that any ineffective assistance of appellate counsel claim by Petitioner would be untimely because such a claim did not appear in Petitioner's original habeas corpus petition dated May 29, 2009 and was never raised prior to the expiration of the one-year period of limitations that applies to habeas corpus actions under the Antiterrorism and Effective Death Penalty Act (AEDPA).  28 U.S.C. § 2244(d)(1).  Petitioner submitted a reply letter dated January 24, 2010, in further support of his motion for an abeyance.  On February 2, 2010, Petitioner's motion for a stay and abeyance was denied without prejudice to Petitioner renewing his application if he could demonstrate, prior to February 23, 2010, that the period of limitation on his claim of ineffective assistance of appellate counsel was tolled

at any point between June 23, 2008 and June 23, 2009 sufficiently to have brought this motion in December 2009.  Petitioner did not renew his application to add the ineffective assistance of appellate counsel claim.  On April 23, 2010, Respondent filed an opposition to Petitioner's original petition for a writ of habeas corpus.

## II. DISCUSSION

Petitioner raises three challenges to his sentence in his § 2254 motion.  First, Petitioner argues that he was deprived of his rights to due process of law and a fair trial because of prosecutorial misconduct.  (Pet. ¶ 12.)  Second, Petitioner argues that he was deprived his constitutional right of confrontation as articulated by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004).  (Id.)  Third, Petitioner argues that his sentence under the New York persistent felony statues violates the principles established by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000).  (Id.)

For the reasons that follow, the Petition is denied.

## A.        Section 2254 Standard of Review

A petitioner in custody pursuant to a state court judgment is entitled to habeas relief if he can show that his detention violates the United States Constitution or the laws or treaties of the United States.  28 U.S.C. § 2254(a).  In order to present his claims to a federal court, a petitioner must have exhausted his claims by appealing them to the state's highest court.  28 U.S.C. § 2254(b)(1).  If a petitioner's claims were previously decided on the merits, habeas relief may be granted only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

**B.      Exhaustion: All Claims Are Exhausted, but the Prosecutorial Misconduct Claim Is Procedurally Barred from Federal Review**

Under 28 U.S.C. § 2254(b)(1)(A), a petitioner for federal habeas corpus relief must exhaust the remedies available in state courts by presenting his federal constitutional claims to the highest court of the state before the federal court may consider his petition on its merits.  Picard v. Connor, 404 U.S. 270, 275-76 (1971); see also Grey v. Hoke, 933 F.2d 117, 119-20 (2d Cir. 1991).  It is insufficient for the applicant's claims to be merely presented to the state courts; they must be *fairly* presented.  See Picard, 404 U.S. at 275-76.  In order for claims to be fairly presented, the state court must be "fairly apprised that petitioner is raising a federal constitutional claim and of the factual and legal premises underlying the claim."  Grey, 933 F.2d at 119 (citing Morgan v. Jackson, 869 F.2d 682, 684 (2d Cir. 1989)).

In the instant case, Petitioner filed his initial appeal to the Appellate Division, First Department with a brief arguing the following three claims: (1) prosecutorial misconduct, (2) Crawford violation, and (3) Apprendi violation.[6]  On January 29, 2007, subsequent to the Appellate Division's affirmance of Petitioner's conviction, Petitioner submitted a letter of leave to appeal to the New York State Court of Appeals that did not raise particular claims, but stated, "We ask this Court to consider and review all issues

---

[6]      Petitioner's Apprendi claim in his Appellate Division brief was comprised of two sections: (a) that Petitioner's right to due process and a jury trial were violated when his adjudication and sentence as a persistent violent felony offender were resolved by the sentencing court without a jury; and (b) that Petitioner's equal protection rights were violated because "there is no rational basis for distinguishing between [Petitioner's] situation and the statutes that do require a jury to determine a defendant's predicate felony status."  (Ex. A at 53-54.)  Petitioner did not present the Equal Protection violation argument in his federal habeas corpus petition (see Pet. ¶ 12[c]), but maintains the due process and jury trial argument. Therefore, any reference to Petitioner's Apprendi claim hereinafter refers only to the due process and jury trial argument.

raised in the enclosed Brief for Defendant-Appellant."  (Ex. D.)  Copies of the Appellate

Division briefs were attached.  (Id.)  On February 23, 2007, Petitioner submitted a follow-

up leave letter addressing only the Crawford claim.  (Ex. E.)  The follow-up letter did not

make an explicit request that the Court consider all the issues raised in the Appellate

Brief.  (Id.)  The government responded to the follow-up letter addressing Petitioner's

Crawford claim.  (Ex. F.)  On March 9, 2007, Petitioner submitted a letter in response to

the government's Crawford arguments and concluded with the statement, "…Mr. Leon

relies on the arguments raised in the main leave letter."  (Ex. G.)  On May 3, 2007, the

Court of Appeals granted Petitioner's leave application.  (Ex. H.)

On June 25, 2007, Petitioner submitted a brief to the New York State Court of

Appeals appealing his conviction arguing two grounds: (1) the Crawford violation and (2)

the Apprendi violation.  (Ex. I.)  The government filed its responding brief addressing the

same two claims.  (Ex. J.)  On August 28, 2007, Petitioner submitted a reply brief, once

again arguing only the same two claims.  (Ex. K.)  In a decision dated February 19, 2008,

the Court of Appeals affirmed the Appellate Division's decision.  People v. Leon, 884

N.E.2d 1037 (N.Y. 2008).[7]  In all the Court of Appeals briefs and the decision, the only

issues considered were the Crawford claim and the Apprendi claim.  There was no

mention of the prosecutorial misconduct argument.

In Grey v. Hoke, the leading Second Circuit decision addressing when a claim is

"fairly presented" to a state court for exhaustion purposes, the petitioner attached his

Appellate Division brief to his letter application to the Court of Appeals.  While the letter

only requested review of the search and seizure claim, the attached brief also addressed

---

[7]      A copy of the Court of Appeals decision is attached to Respondent's Opposition Memorandum as
Exhibit L.

sentencing and prosecutorial misconduct claims.  The Second Circuit held that "[t]he fair import of petitioner's submission…consisting of his brief to the Appellate Division that raised three claims and a letter…arguing only one of them, was that the other two had been abandoned."  <u>Grey</u>, 933 F.2d at 120.  The Second Circuit found the other claims to be procedurally barred from federal review.  <u>Id.</u>  The Second Circuit has further explicated the <u>Grey</u> decision by holding that "[a]rguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims."  <u>Jordan v. Lefevre</u>, 206 F.3d 196, 198 (2d Cir. 2000) (citing <u>Grey</u>, 933 F.2d at 120).

In the same year as <u>Jordan</u>, the Second Circuit decided <u>Morgan v. Bennett</u>, 204 F.3d 360 (2d Cir. 2000), drawing a distinction with <u>Grey</u> and <u>Jordan</u>.  In <u>Morgan</u>, the petitioner explicitly requested in his initial leave letter that the Court of Appeals "'consider and review all issues outlined in defendant-appellant's brief and pro se supplemental brief' submitted to the Appellate Division."  <u>Morgan</u>, 204 F.3d at 370-71. The Second Circuit found that this statement was sufficiently specific to alert the Court of Appeals that petitioner sought review for all the issues within the brief and found that even though the petitioner had submitted a second letter addressing only some of the issues, that these issues were supplemental issues to be considered "in addition to, not in lieu of or as a limitation on" the issues raised in the initial letter.  <u>Id.</u> at 370-71.

At first glance, the instant case is similar to <u>Morgan</u> in that Petitioner made an explicit request in his initial leave letter that the Court "consider and review all the arguments found in the Appellate Division brief."  (Ex. H.)  Moreover, under <u>Morgan</u>,

Petitioner's subsequent letters focusing on the <u>Crawford</u> and <u>Apprendi</u> claims do not eliminate the prosecutorial misconduct claim.  (Exs. E, F.)

However, the instant case may be distinguishable from <u>Morgan</u> because Petitioner's actions after his initial leave letter were more substantial in indicating that the prosecutorial misconduct claim had been abandoned; in particular, on June 25, 2007, over three months after filing his final letter, Petitioner submitted a brief to the Court of Appeals detailing only the <u>Crawford</u> and <u>Apprendi</u> claims which concluded with the statement, "For the reasons stated herein, the Appellate Division's Decision should be reversed, the sentence vacated and the case remanded for resentencing."  (Ex. I at 59.) Further, in response to the government's brief, Petitioner submitted a reply brief on August 28, 2007 once again only addressing the same two claims with no mention of the prosecutorial misconduct claim.  (Ex. K.)  Moreover, the New York Court of Appeals' decision, dated February 19, 2008, only addressed the same two claims with no reference to the prosecutorial misconduct claim, further suggesting that the Court of Appeals was not fairly apprised of the prosecutorial misconduct claim.  <u>See</u> <u>Leon</u>, 884 N.E.2d at 1038-40.

In light of Petitioner's subsequent actions after his initial letter of leave – actions that <u>Morgan</u> does not address – under the standard articulated in <u>Grey</u> and <u>Jordan</u> and the particular procedural history of Petitioner's appeals, it is a fair conclusion that the New York Court of Appeals was not fairly apprised of the prosecutorial misconduct claim. <u>See</u> <u>Grey</u>, 933 F.2d at 120 ("We decline to presume that the New York Court of Appeals has a 'duty to look for a needle in a paper haystack.'" (quoting <u>Mele v. Fitchburg Dist. Ct.</u>, 850 F.2d 817, 822 (1st Cir. 1988))).

Notwithstanding the fact that this claim was not presented to the highest court of the state, 28 U.S.C. § 2254(b)(i) provides an exception which a petitioner may still have a claim deemed exhausted – and therefore reviewed on its merits – by a federal court if there is "an absence of available State corrective process."  Here, although the prosecutorial misconduct claim was not presented to the New York Court of Appeals, because he has already made the one request for leave to which he was entitled and because Petitioner is barred from collaterally attacking his conviction on the basis of his prosecutorial misconduct claim, the claim can be deemed exhausted by the district court under discrete circumstances.  See Grey, 933 F.2d at 120 (citing N.Y. Ct. Rules, § 500.10(a), N.Y. Crim. Proc. Law § 440.10(2)(a)); see also Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is 'an absence of available State corrective process' . . . In such a case the habeas court theoretically has the power to deem the claim exhausted." (citing Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997))).

However, Grey holds that "absent a showing of cause for the procedural default and prejudice resulting therefrom," a claim that is deemed exhausted by virtue of a lack of state corrective process is procedurally barred and cannot be reviewed on its merits by a federal court.  Grey, 933 F.2d at 121 (citing Murray v. Carrier, 477 U.S. 478, 492 (1986)); see also Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).  In the instant case, there is nothing in the record that demonstrates a showing of cause for the procedural default or prejudice resulting therefrom.[8]

---

[8]      One line in Petitioner's reply letter in further support of his motion for an abeyance reads: "The basis for ineffective assistance of Appellate counsel is for counsel['s] failure to include previously raised issues in his final briefs to the highest State Courts."  (Letter from Petitioner dated Jan. 24, 2010 at 1.) Even if this single line is read liberally to constitute "cause" for the procedural default of Petitioner's

In sum, Petitioner's <u>Crawford</u> and <u>Apprendi</u> claims are properly exhausted and even if the prosecutorial misconduct claim is deemed exhausted because of an absence of available state corrective process, that claim is procedurally barred and dismissed without reaching the merits because Petitioner has made no showing of cause for the procedural default and no prejudice resulting therefrom.

## C.    Petitioner Complied with 28 U.S.C. § 2244(d)(1) Statute of Limitations Period of One Year

Respondent contends that Petitioner's writ is barred by the AEDPA one-year statute of limitations period.  (Opp'n Mem. at 12-14.)  Respondent argues that the statute of limitations began to run on the date of final judgment – allegedly May 19, 2008, ninety days after the New York Court of Appeals affirmed Petitioner's conviction on February 19, 2008 and also the date his time to seek a writ of certiorari to the United States Supreme Court expired.  (<u>Id.</u> at 12.)  Respondent argues that because Petitioner filed the instant Petition on May 29, 2009, the Petition is untimely by ten days.  (<u>Id.</u> at 13.)

Petitioner's writ is timely.  A person in custody pursuant to a State court judgment has a one-year period of limitation to apply for a writ of habeas corpus.  28 U.S.C. § 2244(d).  The date of final judgment is *either* the expiration of the time of seeking direct review *or* the date of the conclusion of direct review.  § 2244(d)(1)(A). Respondent's contention that Petitioner's writ is untimely does not take into account that the Supreme Court of the United States denied Petitioner's writ of certiorari on June 23,

---

prosecutorial misconduct claim and that claim merges with the unexhausted ineffective assistance of appellate counsel claim, <u>see</u> <u>Loving v. O'Keefe</u>, 960 F. Supp. 46, 48 & n.2 (S.D.N.Y. 1997), this Court would still be unable to review the prosecutorial misconduct claim on the merits because the ineffective assistance of appellate counsel claim is both unexhausted and time-barred.  Petitioner provided no reason why his ineffective assistance of appellate counsel claim should be considered timely, despite being given an opportunity to do so.  (<u>See</u> Order dated Feb. 2, 2010.)

2008.  See Leon v. New York, 128 S. Ct. 2976 (2008).  Petitioner's writ was filed on

May 29, 2009 which was before the expiration of the one-year limit on June 23, 2009.

**D.     Petitioner Was Not Denied His Confrontation Rights As Established in Crawford v. Washington[9]**

Petitioner claims that the trial court violated his Confrontation Clause rights as

articulated in Crawford v. Washington, 541 U.S. 36 (2004), during the predicate felony

hearing.  (Pet. ¶ 12[b]; see also Ex. I at 18-19.)  Petitioner argues that Crawford requires

the sentencing court to have granted him the opportunity to cross-examine the fingerprint

examiner whose affidavit identified Petitioner as the individual who committed two prior

violent felonies.  (Ex. I at 18-19.)  Petitioner asserts that because the court relied on the

testimonial affidavit of the fingerprint examiner in establishing that he was a persistent

violent felony offender, his right to confrontation was denied. (Id.)

In Crawford, the Supreme Court of the United States held that the Sixth

Amendment's Confrontation Clause – providing that "[i]n all criminal prosecutions, the

accused shall enjoy the right … to be confronted with the witnesses against him" –

applies to out-of-court testimonial statements.  Crawford, 541 U.S. at 59.  In short, out-

of-court testimonial statements of witnesses absent from trial may only be admitted

where the declarant is unavailable and the defendant has a prior opportunity to cross-

examine the declarant.  Id.

At the sentencing hearing dated November 29, 2004, Defendant denied that a

1983 manslaughter conviction referred to the same Jose Leon as Defendant and argued

---

[9]      Petitioner's petition for a writ of habeas corpus stated each individual ground upon which he alleges he is being unlawfully and stated that supported facts would be "More Fully Demonstrated in the 'Addendum to Petition.'"  (Pet. ¶ 12.)  There was no attached addendum to the Petition.  Because courts are instructed to construe pro se submissions liberally, this Court reads the Petition to raise the strongest arguments it suggests.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  All legal arguments contained in Petitioner's Appellate Division and New York Court of Appeals briefs have been considered.

that the fingerprint comparison certification should not be admitted into evidence under Crawford.  (Transcript of continued Sentencing Hearing held Nov. 29, 2004 ("11/29/04 Tr.") at 50-51.)  The fingerprint comparison certification showed that the fingerprint of the Jose Leon of the 1976 conviction under New York State Identification Number (NYSID) 3897636Y with the date of birth of August 17, 1958 matched the fingerprint of the Jose Leon, NYSID 3897636Y, arrested in 1982 for manslaughter.  (Id.; see also 12/2/04 Tr. at 33-34.)  After a brief adjournment, the sentencing court reconvened on December 2, 2004, at which time, Justice Marcy L. Kahn held that Crawford does not apply to sentencing proceedings.  (12/2/04 Tr. at 8-10.)  The fingerprint comparison certification was held admissible without the live testimony of the fingerprint analyst. (Id.)  Defendant then denied that he was the individual in both the 1976 and 1983 convictions.  (Id at 31-32.)  Immediately thereafter, Defendant conceded that he was the individual from the 1976 conviction. (Id. at 32.)  On December 2, 2004, Justice Kahn adjudicated Defendant as a persistent violent felony offender. (Id. at 41-44.)

New York Criminal Procedure Law § 400.15(7) states that "the burden of proof is upon the people and a finding that the defendant has been subject to a  predicate violent felony conviction must be based upon proof beyond a reasonable doubt by evidence admissible under the rules applicable to a trial of the issue of guilt."  Petitioner argues this means that any rule concerning the admissibility of evidence at trial is applicable to a predicate felony hearing and therefore, the Crawford rule of confrontation applies in predicate felony hearings.  (Ex. A at 49; Ex. I at 23-25.)  Petitioner cites Specht v. Patterson, 386 U.S. 605 (1967), and Oyler v. Boyles, 368 U.S. 448 (1962), as supporting cases that demonstrate that Crawford applies in recidivist hearings.  (See Ex. A at 49; Ex.

I at 28, 30-33.)  Moreover, Petitioner argues that the fingerprint comparison affidavit is a testimonial document prepared for the purposes of this particular litigation and therefore the court's reliance upon this document in "a highly specific factual finding" proceeding is a violation of the rule set forth in Crawford.  (Ex. A at 50; Ex. I at 39, 46-47.)

The Appellate Division found that the trial court had "properly adjudicated defendant a persistent violent felony offender on the basis of admissible evidence," and rejected Petitioner's constitutional arguments regarding his persistent violent felony offender adjudication.  People v. Leon, 827 N.Y.S.2d 156, 157 (App. Div. 1st Dep't 2007).  The New York Court of Appeals affirmed the Appellate Division by reading Crawford to apply to trial prosecutions, not sentencing proceedings.  People v. Leon, 884 N.E.2d 1037, 1039 (N.Y. 2008).  The court also found that (1) section 60.60 of the New York Criminal Procedure Law permits the admission of affidavits based on fingerprint comparisons at predicate sentencing hearings and that (2) section 400.15's requirement that "evidence be subject to the rules applicable to a trial of the issue of guilt" does not incorporate the trial right of confrontation to sentencing proceeding.  (Id.)

The Court of Appeals' ruling was neither contrary to, nor an unreasonable application of, established United States Supreme Court law.  The Supreme Court in Williams v. New York, 337 U.S. 241, 246-51 (1949), stated that the Confrontation Clause is not applicable at sentencing proceedings because the sentencing judge must be free to consider information otherwise unobtainable.[10]  See also Williams v. Oklahoma, 358 U.S. 576, 584 (1959); United States v. Garcia, 167 F. App'x 259 (2d Cir. 2006); United States v. Martinez, 413 F.3d 239, 242 (2d Cir. 2005) ("Both the Supreme Court

_____

[10]     While Williams was decided prior to Crawford, Crawford does not overrule this aspect of Williams' holding.  See United States v. Martinez, 413 F.3d 239, 243 (2d Cir. 2005) (citing Bach v. Pataki, 408 F.3d 75, 86 (2d Cir. 2005)).

and this Court, however, have consistently held that the right of confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay testimony in sentencing proceedings.").  Petitioner's citations from <u>Specht</u> and <u>Oyler</u> are not controlling in regards to how the Confrontation Clause applies to persistent violent felony offender adjudication.  <u>Oyler</u> held only that due process required that a defendant is entitled to pretrial notice that he would be sentenced as a persistent felony offender and "an opportunity to be heard."  <u>Oyler</u>, 368 U.S. at 452.  Citing <u>Specht</u>, Petitioner defines the requirement of "an opportunity to be heard" as the right of confrontation.  (Ex. I. at 28 (citing <u>Specht</u>, 386 U.S. at 610).)  However, the Supreme Court in <u>Specht</u> found that the right of confrontation is required in a *commitment* hearing – as opposed to a persistent violent felony offender hearing or other hearing to determine predicate offenses for sentencing purposes – which the Court described as a "separate criminal proceeding which may be invoked after conviction."  <u>Id.</u> at 609.  Further, the Supreme Court expressly stated that it was adhering to <u>Williams v. New York</u>.  <u>Id.</u> at 608.

### E.   Petitioner's Sentence Did Not Violate His Jury Trial Rights as Established in <u>Apprendi v. New Jersey</u>

Petitioner also contends that his adjudication and sentence pursuant to New York's persistent violent felony offender statutes are unconstitutional under <u>Apprendi v. New Jersey</u>.  (Pet. ¶ 12[c]; <u>see also</u> Ex. A at 53.)  Petitioner asserts that under the Due Process Clause the question of his status as a persistent violent felony offender should be submitted to the jury. (Ex. A at 53; Ex. I at 54-55.)

On October 4, 2004, a sentencing hearing was held to determine whether Defendant was a mandatory persistent violent felony offender pursuant to New York Penal Law § 70.08.  (<u>See</u> Transcript of Sentencing Hearing held Oct. 4, 2004, ("10/4/04

Tr.") at 4-5.)  The government presented documentary evidence that Defendant had been previously convicted of two felonies that met the New York law definition of predicate violent felony convictions:[11] (1) Certificates of convictions for a 1976 manslaughter conviction and a 1983 manslaughter conviction;[12] and (2) a fingerprint comparison card that compares and matches the fingerprints of  (a) the Jose Leon, New York State identification number (NYSID) 3897636Y, of the 1976 arrest, with (b) the Jose Leon, same NYSID number, of the 1982 arrest.  (11/29/04 Tr. at 50-51.)  During this proceeding, Defendant initially refused to concede that he was the individual convicted in 1983.  (Id. at 50.)  After the final adjournment of the sentencing hearing, the Defendant then disputed both convictions.  (12/2/04 Tr. at 31-32.)  After conferring with his attorney, Defendant conceded that he was the person convicted in 1976.  (Id. at 32.)  On December 2, 2004, Justice Kahn found that Defendant met the definition for a persistent violent felony offender under New York Penal Law § 70.08 and New York Criminal Procedure Law § 400.15(7), and sentenced Defendant to 15 years to life imprisonment. (Id. at 45, 57-58.)

Petitioner claims that the sentence increase he received due to his status as a persistent violent felony offender was a violation of the Sixth Amendment and the Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000), that the factual dispute as to Petitioner's identity as the individual who committed the prior crimes is outside the "fact of a prior conviction" exception of Apprendi.  (Ex. I at 55-56.)

---

[11]    See New York Penal Law § 70.08(1)(a) ("A persistent violent felony offender is a person who stands convicted of a violent felony offense as defined in subdivision one of section 70.02  . . .  after having previously been subjected to two or more predicate violent felony convictions as defined in paragraph (b) of subdivision one of section 70.04 of this article.").
[12]    The government noted that this certificate showed that Defendant was sentenced for a term of imprisonment from seven to fourteen years as a predicate.  (12/2/04 Tr. at 24-25.)

The Appellate Division rejected this argument and concluded that Petitioner was properly adjudicated a persistent violent felony offender and that his constitutional arguments were meritless.  People v. Leon, 827 N.Y.S.2d 156, 157 (App. Div. 1st Dep't 2007).  The Court of Appeals also found Petitioner's argument to be without merit. People v. Leon, 884 N.E.2d 1037, 1040 (N.Y. 2008).

The Court of Appeals' ruling was neither contrary to, nor an unreasonable application of, established Supreme Court law.  It is consistent with the Court's ruling in Apprendi, which specifically excepted "the fact of a prior conviction" from the facts that need to be proven to a jury and beyond a reasonable doubt.  Apprendi, 530 U.S. at 490; United States v. Santiago, 268 F.3d 151, 156 (2d Cir. 2001) ("We read Apprendi as leaving to the judge . . . the task of finding not only the mere fact of previous convictions, but other related issues as well . . . the 'who, what, when, and where' of a prior conviction."); Long v. Donnelly, 335 F. Supp. 2d 450, 465 (S.D.N.Y. 2004) ("NYPL § 70.08 is squarely within the narrow exception announced in Apprendi encompassing judicial fact-finding based solely on prior convictions.")[13]

Petitioner's claim is unaffected by the recent Second Circuit case holding one of New York's persistent felony offender statutes, New York Penal Law § 70.10, unconstitutional as a violation of the Sixth Amendment right to a jury trial.  Besser v. Walsh, 601 F.3d 163 (2d Cir. 2010).  Besser expressly does not apply to the statute at issue here, New York Penal Law § 70.08, because § 70.08 requires the judge to sentence a defendant as a persistent violent felony offender *solely* upon the court's finding of

---

[13]     In Long v. Donnelly, the court held that the petitioner's Apprendi claim was procedurally barred because it was not preserved for appellate review.  However, the court made note of the substantive defects of the claim even if it had been preserved, and found it to be meritless.  See Long, 335 F. Supp. 2d at 465-66.

qualifying predicate convictions, see id. at 170 n.5, and at least one district court has

since noted that Besser does not apply to § 70.08. See Jackson v. Conway, 07-CV-

06364T, 2010 WL 2010924, at *2 n.1 (W.D.N.Y. May 18, 2010).

## III. CONCLUSION

For the reasons discussed herein, Mr. Leon's Petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 is denied. The docketing clerk is respectfully requested to

close civil case number 09cv5760.

IT IS SO ORDERED.

Dated: New York, New York
July 29, 2010

Robert P. Patterson, Jr.
U.S.D.J.

Copies of this order were sent to:

Mr. Jose Leon, Petitioner *Pro Se*
#04-A-6580
Attica Correctional Facility
P.O. Box 149
Attica, NY 14011-0149
(by mail)

Leilani Rodriguez
Assistant Attorney General
Federal Habeas Corpus Section
120 Broadway, New York NY
Fax: 212-416-8010
(by fax)